(35 South. 493.)

No. 14,674.

BRADFORD et al. v. HAAS.*

(June 23, 1903.)

VENDOR AND PURCHASER—OPTION CONTRACT —DEPOSIT—RETURN.

1. Where a deposit is to be made for an option on the purchase of a large body of lands, of which the titles are to be examined, the deposit to be forfeited in case the purchaser does not consummate the purchase, and the deposit is actually made, and a receipt for the money is signed, but the parties do not agree upon the length of time to be allowed to the purchaser for the examination of the titles, and a heated discussion follows, in the course of which the vendor announces that the deal is off, and both parties grab for the receipt, the vendor securing that part of the receipt on which is his signature, and the parties separate, the vendor keeping both the receipt and the money, *held*, there has been no contract, and the deposit must be returned.

(Syllabus by the Court.)

Appeal from Sixteenth Judicial District Court, Parish of St. Landry; Edward Taylor Lewis, Judge.

Action by James L. Bradford and others against John A. Haas. Judgment for defendant, and plaintiffs appeal. Reversed.

Kenneth Baillio and Clegg & Quintero, for appellants. Lewis & Lewis, for appellee.

PROVOSTY, J. The defendant, Dr. John A. Haas, residing in the town of Opelousas, La., having some 80 pieces of land for sale, aggregating some 9,000 acres, agreed with a friend of his, Raymond Breaux, also a resident of the town of Opelousas, to let the latter have during 60 days the exclusive privilege of selling these lands, and executed in his favor the following document:

"Opelousas, La., March 13th, 1901.

"Mr. Raymond Breaux, Opelousas, La.— Dear Sir: In further compliance with your

---

*Rehearing denied January 6, 1904.

verbal request and my promise to place in your hands for sale lands as per list now in your possession, I will state that I do now authorize and empower you to enter into such bond and agreement looking towards selling to your prospective purchasers all the lands so described and for the consideration so named. The actual terms of purchase, that is the amount of cash to be paid down and the deferred payments to be agreed upon between us.

"You will understand that I will expect you or your prospective purchasers to put up a forfeit in case of no purchase and in case of purchase to go as part payment of the lands purchased. Should you be successful in closing the deal I will allow you out of the purchase price a commission equal to 5% of the total amount and this agreement to hold good for sixty days from date.

"Respectfully yours,

"John A. Haas."

The "list" that is here referred to as being in the possession of Breaux was a document in which each tract of land was described separately, with the price asked for it set opposite. In the letter it is said that the terms of the sale would be thereafter agreed on. The parties did afterwards accordingly so agree. A Mr. Welman Bradford, of Crowley, La., in the preceding December had written to the same Mr. Breaux as follows:

"Crowley, La. December 30, 1900.

"Mr. Raymond Breaux, Opelousas, La. Dear Friend: Yours of this date received. In a short time I expect to be in a position to put up a forfeit for an option of say ninety days. Now. will you find out of Dr. John Haas how much land he has in prairie Mamou and what forfeit he will require for an option. This deposit is to be forfeited in the event no sale is made and is to apply as part payment if sale is effected. Wish you would explain to the Doctor that my clients insist on this option in order to have ample time to investigate titles.

"Be particular not to mention my name. In case you can approach Dr. Marshall on the same basis, see what you can do with him.

"I wrote Capt Haas to-day. Would like to get figures on from 10 to 20,000 acres of land.

Be sure to arrange with Dr. John Haas for your commission on this sale.

"As soon as you hear, please let me know. "Yours truly,

"[Signed]          Welman Bradford."

Mr. Bradford was engaged in an undertaking to dig a canal through the section where the lands of Dr. Haas are situated, and was anxious to have his associates in the canal enterprise buy these lands; a large part of them lying adjacent to the canal right of way. Whether it was or not in view of this letter that Breaux secured from Haas the privilege of finding a purchaser for the lands is not testified to, but the inference is that it was. At any rate, Bradford endeavored to induce his associates in the canal enterprise to buy the lands, and continued to do so until a short time before the expiration of the 60 days accorded to Breaux, when, despairing of succeeding with the canal people, he addressed himself to the plaintiffs, residents of New Orleans. The date of his entering into negotiations with plaintiffs is not testified to, but is inferentially fixed at about May 6th; that being the date of a document in which Breaux gives authority to Bradford to represent him in "engineering" a sale of the lands. A few days after this, Bradford entered into negotiations with his uncle Mr. J. L. Bradford, one of the plaintiffs, and between that date and the 11th of May J. L. Bradford broached the matter to the other plaintiffs. When the other plaintiffs first heard of it, is not shown. One of them had not heard of the matter before the 11th of May. On that day the plaintiffs decided to buy the lands; and, as the next day would be Sunday, and they feared the business could not be validly transacted on the Sabbath, they sent the following telegram:

"To Raymond Breaux, Opelousas, La.: Tender Dr. Haas $5,000 to close option on land deal. Will arrive to-morrow with the $5,000 in cash. [Signed] Welman Bradford."

Not having command of the requisite $5,000, Breaux was unable to make the tender; but he saw Dr. Haas, and the two consulted counsel, and Breaux telegraphed to Welman Bradford that the tender could be validly made on Sunday, and that Dr. Haas would accept it if made. The next day, then, the

12th of May—the last day of the 60-day term accorded to Breaux—Welman Bradford arrived at Opelousas for the purpose of closing a bargain for the lands by depositing the $5,-000. He and Mr. Breaux went to the office of Dr. Haas, and there Mr. Bradford stated that he had come to close the deal for the lands, and thereupon he handed to Dr. Haas the $5,-000, together with a receipt to be signed. Dr. Haas counted the money, found it correct, and laid it on his desk, and, pushing the money back in the desk, signed the receipt. Then the question of what time the purchasers would have for examining the titles came up. Mr. Welman Bradford wanted "a reasonable time," or, if he was required to assign a fixed time, he wanted 90 days. Dr. Haas was at first unwilling to allow any time at all, then insisted on 5 days, and gradually yielded to 35 days, and was willing that the abstracters should set to work upon the investigation of the titles, and that, if the 35 days proved insufficient, he would allow more time. The discussion between the parties became heated; the disputants, excited. Dr. Haas declared that the deal was off, and thereupon each of the parties made a grab for the receipt; Mr. Bradford getting two of the sheets (the two first), and Dr. Haas the third (that on which the signatures were). The parties then separated.

There is contradiction between the parties as to what was the attitude of Dr. Haas at the time of the separation with regard to whether the bargain had been closed, or was off. He says that his position was that the bargain was closed, and an accomplished fact. His attitude, according to Mr. Welman Bradford, was that the deal was off, and that the money was in the desk at the risk of Mr. Bradford. The attitude of Mr. Bradford was that the money had been deposited, and the bargain closed, subject to the right of the purchaser to a reasonable time to examine titles. The statement of Mr. Bradford is, "The doctor tendered back the money to me, saying the deal was off; that the money was left at my risk." Dr. Haas' statement is that, when he said the deal was off, Mr. Bradford "grabbed up two papers (that is, two of those sheets), and remarked: 'The money is up, and the deal is on.' I told him: 'Well, that settles it, and, if you want it, it goes that way, and that's agreeable to me.'" Mr.

Breaux, the only witness present, testifies to nothing except to the inability of the parties to agree upon what time the purchasers should have for examining the titles. The fact is that Dr. Haas kept the money in the desk, and kept the receipt.

The receipt reads as follows:

"Opelousas, La., May 12th, 1901.

"Received of Welman Bradford the sum of five thousand dollars in part payment of certain lands as per lists and memoranda handed to Mr. Raymond Breaux, the same lands covered by the option held in the name of Mr. Breaux and now held by transfers and substitution by Welman Bradford.

"The said lands to be paid for as per agreement, being ½ cash and balance in one, two and three years, or on or before said maturing time as purchasers may elect, with five per cent. int. from date, payable annually Welman Bradford reserving the right to substitute any person or persons in his stead as purchasers as well as the right of rejecting such tracts as might prove faulty in titles.

"I hereby agreeing to aid the said Welman Bradford or his representative in perfecting the titles as far as my ability will permit.

"It being clearly understood that the sum of $5,000 is to be forfeited in event of no purchase.

"This memoranda or list including the lands of myself and Dr. R. T. Marshall.

"The parties to this agreement waiving the dies non.

"The vendor reserving the right to collect rents on lands rented for the year 1901.

"[Signed]              J. A. Haas.
                        "Welman Bradford."

Welman Bradford was unable to communicate with his principals on that day, it being Sunday. On the next day he sent them the following telegram:

"Opelousas, La., May 13th, 1901.

"James L. Bradford, Story Building, N.O.: Tender made counted by Haas found correct articles of agreement signed, but Haas wanted thirty days' limit or earlier for transfer. I proposed 'a reasonable time.' Last page of agreement containing signatures retained by him. Haas tendered back money. I refused money in his keeping. Haas fears 'reasonable time' would be too long and he lose oppor-

tunity to immediately reinvest. Haas guarantees title advise me before ten fifteen.

"[Signed]          Welman Bradford."

In reply to this telegram, Bradford's principals, the plaintiffs, on the same day, telegraphed him to withdraw the money and come home. The same day Bradford communicated this telegram to Haas, but said he would go to New Orleans and try to get the plaintiffs to complete the deal. Dr. Haas says his reply was that, "if the people in New Orleans wanted the money back, they must come up and complete the deal, and get the money as part of the purchase price." The plaintiffs refused to go on with the deal, and demanded the money back, and, on the refusal of Haas to give it up, have brought this suit to recover it. The defense is that the money was deposited under the terms of the option granted to Breaux, by which a forfeit was to be put up to close the bargain, and under the terms of the receipt, by which the $5,000 was to be forfeited "in the event of no purchase." The case turns upon whether that Sunday, in the office of Dr. Haas, the parties completed their contract. We do not think they did. People do not buy 80 pieces of land, aggregating some 9,000 acres, without examining the titles, and people do not examine the titles to lands they think of buying until they have secured an option. It was to obtain such an option that the $5,000 was to be deposited. The very receipt signed by Dr. Haas clearly contemplated that some time should be granted, for it speaks of "the right of rejecting such tracts as might prove faulty in titles," and of Dr. Haas "agreeing to aid in perfecting the titles." The purpose, and the only purpose, of the deposit, was to obtain an option. The position taken by Dr. Haas with regard to the act of purchase having to be consummated before investigation of the titles was clearly untenable, as he himself soon realized. Now, it is perfectly plain that the plaintiffs never got the option for getting which they were willing to deposit the $5,000. There cannot be an option without an agreement as to its duration, and the parties never arrived at this agreement. Dr. Haas never even gave the plaintiffs a receipt for the money. He gave one, but took it back. The plaintiffs never, in point of fact, got the option for which they were to deposit the $5,000, and

therefore they are entitled to recover the money.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the plaintiffs, James L. Bradford, William P. Brown, William Mason Smith, Henry De L. Vincent, and Frank B. Hayne, have judgment against Dr. John A. Haas for the sum of $5,000, with legal interest thereon from the 12th day of May, A. D. 1901, and that the defendant pay the costs of suit.